**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**WILLIAM TRAMPAS WIDMYER,**

      **Petitioner,**

**v.**                                                                         **Case No. 1:10cv84**
                                                                              **(Judge Keeley)**

**DAVID BALLARD, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On January 20, 1999, Petitioner was indicted in Jefferson County, West Virginia on six separate counts: (1) murder in the 1st degree; (2) malicious assault; (3) destruction of property; (4) breaking and entering; (5) petit larceny; and (6) possessing any vehicle knowing it to be stolen. On July 22, 1999, following a jury trial, Petitioner was convicted of all counts as contained in the indictment. ECF No. 88-5 at 7-10. On August 30, 1999, the circuit court held a sentencing hearing and sentenced Petitioner to the penitentiary for consecutive sentences of life without mercy on Count I; not less than 2 years nor more than 10 years on Count II; 1 year on Count III; not less than 1 year nor more than 10 years on Count IV; 1 year on Count V; and not less than 1 year nor more than 5 years on Count VI. ECF No. 13-2.

Thereafter, Petitioner filed a timely petition for appeal of his conviction which raised six assignments of error. ECF No. 88-10. The West Virginia Supreme Court of Appeals ("WVSCA") refused the petition November 1, 2000. ECF No. 88-11.  On February 16, 2001, Petitioner filed a Petition for Writ of Habeas Corpus Ad

Subjiciendum in the Circuit Court of Jefferson County, West Virginia, which raised 16 grounds for relief. ECF No. 88-12. On April 30, 2001, the State filed an Answer denying all allegations in the petition. ECF No. 88-17. On September 12, 2005, the circuit court ordered Respondent to file a full and complete response. ECF No. 88-18. Respondent filed a response to the petition on December 5, 2005. ECF No. 88-19. On January 3, 2006, the Circuit Court issued a 47 page "Order summarily Denying Petitioner's Writ of Habeas Corpus Ad Subjiciendum." ECF No. 18-20.

On October 14, 2009, Petitioner filed his Petition for Appeal of the habeas denial in the WVSCA. The Petition for Appeal raised 14 assignments of error. ECF No. 88-21. On February 11, 2010, the WVSCA refused the petition. ECF No. 14-3.

## II. <u>Section 2254 Petition</u>

On May 27, 2010, Petitioner filed this habeas petition pursuant to 28 U.S.C. § 2254. ECF No. 1. It raises the following 14 grounds for relief:

A. Petitioner was denied his constitutional right to the due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. and his constitutional right to fair and impartial jury trial as secured by the Sixth Amendment to the Constitution of the U.S.A. when the trial court failed to instruct the petit jury that unlawful assault is a lesser included offense of malicious wounding.

B. Petitioner was denied his constitutional right to the due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. and his constitutional right to a fair and impartial jury trial as secured by the Sixth Amendment to the Constitution of the U.S.A. when the trial court failed to instruct the petit jury that Murder in the Second Degree as a lesser included offense of Murder in the First Degree.

C. Petitioner was denied his constitutional rights to the due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the United States of America and his constitutional right to a fair and impartial jury trial when the trial

court instructed the petit jury on breaking and entering when the State was unable to substantially prove all elements of offense as alleged in the indictment.

D.  Petitioner was denied due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A and a fair and appropriate sentence as secured by the Eighth Amendment to the Constitution of the U.S.A. when the trial court refused to afford the petit jury in his criminal trial an opportunity to listen [to] the audiotape of defendants' statement to the police.

E.  Petitioner was denied a fair and impartial jury trial as secured by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the U.S.A. when the Trial Judge denied Defendant's Counsel's Motion seeking recusal of the trial Judge.

F.  Petitioner was denied his federal constitutional right to a fair and impartial jury trial as secured by the Sixth amendment to the U.S. Constitution and his federal constitutional right to the due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. and petitioner's right to a fundamentally fair sentencing proceeding as guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution when the Circuit Court of Jefferson County, West Virginia, permitted the State to introduce a gruesome photographs [sic] of the decedent's body.

G.  Petitioner was denied his right to due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when on the final day of the trial, petitioner was not present at the *ex parte* conversation between the bailiff and the deliberating jury regarding the jury's request to hear an audiotape of the petitioner's statement to police officers.

H.  Petitioner's confession to an officer of the Ranson Municipal police force, obtained on November 19, 1998, in Shenandoah County, Virginia, was admitted at trial in violation of the Fifth and Fourteenth Amendment to the Constitution of the U.S.A. due to petitioner's prior request for the presence of counsel prior to the statements being made.

I.  Petitioner was denied his constitutional right to due process of law as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution, the equal protection clause of the Fourteenth Amendment to the U.S. Constitution, and his right to a fair and impartial jury trial as secured by the Sixth Amendment to the U.S. Constitution when Petitioner's statement to Ranson police officer was improperly admitted at trial due to the fact that it was obtained in violation of his right to be promptly

3

presented before a Magistrate, pursuant to W. Va. Code § 62-1-5(a) and Rule 5(a) of the West Virginia Rules of Criminal Procedure.

J. Petitioner's right to the due process of law is secured by the Fifth and Fourteenth Amendment[s] to the Constitution of the U.S.A. and his right to an impartial jury as secured by the Sixth Amendment to the Constitution of the U.S.A. when the trial court admitted petitioner's confession to Ranson Police officers because it was the fruit of an illegal arrest, made in violation of the Fourth Amendment to the Constitution of the U.S.A.

K. Petitioner was denied the fundamental fairness of due process of law as guaranteed by the Fifth and Fourteenth Amendment[s] to the Constitution of the U.S.A. when the trial jury was precluded from making a finding of murder in the first degree or murder in the second degree in compliance with W. Va. Code § 62-3-15.

L. The petitioner was deprived of the effective assistance of counsel at trial, in violation of the Sixth Amendment to the U.S. Constitution, W. Va. Code § 62-3-1, and Rule 44(a) of the West Virginia Rules of Criminal Procedure, when defense counsel failed to argue the violation of petitioner's constitutional rights and his prompt presentment as found in Grounds G-K above, at the pre-trial stage of his criminal proceedings, during trial, and in his post-trial motion for a new trial.

M. Petitioner was denied his right to the effective assistance of counsel at trial, as guaranteed by the Sixth Amendment to the U.S. Constitution when during opening and closing arguments defense counsel conceded petitioner's guilt before the jury without the petitioner's prior knowledge or consent.

N. [P]etitioner's appellate counsel was ineffective when he failed to raise the issues found in Grounds G through M of the instant petition in petitioner's direct appeal. The petitioner was, therefore, denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution.

On July 22, 2010, Respondent filed a Motion to Dismiss as Untimely and for Failure to Exhaust State Remedies. ECF No. 13. On August 16, 2010, Petitioner filed a "Motion to Hold in Abeyance." ECF No. 18.  On October 20, 2010, the then presiding United States Magistrate Judge entered a Report and Recommendation in which he concluded that the petition was untimely, and Petitioner failed to establish an entitlement to equitable tolling. Therefore, he recommended that the petition be

dismissed with prejudice and did not address the issue of exhaustion. ECF No. 22. Petitioner filed objections on November 2, 2010. ECF No. 24. On February 23, 2015, the District Court entered an Order declining to adopt the Report and Recommendation. After a comprehensive review of the state proceedings, and referring to Petitioner's numerous court-appointed lawyers, the Court found that their "'failings – of inattention, willful neglect, apathy, and worse – are the type of egregious violations of professional duty that Justice Breyer recognized could constitute 'extraordinary circumstances' justifying equitable relief.'" ECF No. 25 at 11. Therefore, the Court found that the Petitioner was entitled to equitable tolling. The Court then stayed the proceedings pending Petitioner's presentation of his unexhausted claims to the courts of West Virginia. Id. at 13. Because no detail was provided with respect to the exhaustion of state remedies and which claims were not exhausted, the undersigned does so now before addressing the proceedings which followed the grant of stay and abeyance.

Title 28, Section 2254 (b)(1)(A) of the United States Code provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." See Meadows v. Legursky, 904 F.2d 903 (4th Cir. 1990) (a petitioner cannot petition for writ of habeas corpus in federal court until he has exhausted all of his state remedies), *superseded on other grounds by* Trest v. Cane, 522 U.S. 87 (1997); see also Mathews v. Evatt, 105 F.3d 907, 911 (4th Cir.), cert. denied, 522 U.S. 833 (1997) (exhaustion of state remedies requires petitioner to fairly present his claims to the state's highest court).

To exhaust state remedies in West Virginia, a prisoner must fairly raise the federal issue on direct appeal from his conviction, Moore v. Kirby, 879 F. Supp. 592, 593 (S.D.W. Va. 1995), or in a post-conviction proceeding pursuant to West Virginia Code § 53-4A-1 *et seq.*, followed by an appeal to the West Virginia Supreme Court of Appeals.  Bayerle v. Godwin, 825 F.Supp 113, 114-15 (N.D.W. Va. 1993).

Additionally, Petitioner must show that the claims he raised in the state proceedings are identical to the claims he now seeks to raise in this federal habeas case. See Pitchess v. Davis, 421 U.S. 484, 487 (1975); see also Picard v. Connor, 404 U.S. 270, 275-76 (1971). The same factual grounds must be raised in support of the claims as well as the same federal (or other) legal theory for relief. Anderson v. Harless, 459 U.S. 4, 6 (1982).

In the instant matter, the Section 2254 filed by Petitioner contained grounds for federal relief that, although factually identical to his State-court claims, were presented to the state court using legal theories that did not correspond to those raised in the 2254. More specifically, Ground A argued that Petitioner was denied due process when the trial court refused to give a lesser included offence instruction on unlawful assault, given the lack of direct evidence of malice, an element of one of the charged crimes-malicious assault. Petitioner cites Jackson v. Virginia, 443 U.S. 307, 319 (1979) to support this claim. However, Petitioner cited no law, state or federal, in support of this claim in his habeas appeal [ECF No. 13-7 at 16-17] and cited, in his direct appeal, only state law decisions regarding when lesser included offense instructions should be given, which decisions do not depend upon or otherwise address the requirements of proof beyond a reasonable doubt. ECF No. 13-3 at 19-20.

Ground B alleges that Petitioner was entitled to a lesser included offense instruction of second degree murder because of the lack of direct evidence of premeditation and deliberation at trial. Petitioner again relies on <u>Jackson</u>. However, neither <u>Jackson</u> nor the concept for which it stands, the need for proof beyond a reasonable doubt, was presented in any of his State proceedings. ECF No. 13-3 at 17-19; ECF No. 13-7 at 14-16, 30-32.

Ground D claims that Petitioner was denied due process and given a disproportionate sentence when the trial court refused to allow the jury to hear a tape recording of his confession after requesting to do so. This issue was not raised in Petitioner's direct appeal and no constitutional law or federal theories were raised in Petitioner's habeas appeal in support of this claim. ECF No. 13-7 at 19-20.

In Ground E, Petitioner claims he was denied the right to a "fair and impartial jury" by the refusal of the trial court to grant trial counsel's motion to recuse the trial judge. First, Petitioner is confusing his right to an impartial judge, which flows from the Due Process Clause of the Fourteenth Amendment, rather than the Sixth Amendment right to an impartial jury. However, in either case, the claim was not presented to the state courts. In Petitioner's direct appeal, he cited only the State judicial canons of ethics and State procedural law. ECF No. 3 at 12-13. Petitioner cited no authority in support of this claim in his habeas appeal. ECF No. 13-7 at 11-12.

Ground F alleges Petitioner was denied a fair and impartial jury and fair sentencing by the admission of gruesome photos of the decedent's body, citing the Fifth, Sixth, Eighth and Fourteenth Amendments. In Petitioner's direct appeal, the argument in support of this claim was based entirely on the West Virginia Rules of

Evidence, Rules 401 and 403. ECF No. 13-3 at   In Petitioner's habeas appeal, Petitioner not only relies exclusively on state rules of evidence but specifically states that the argument does not rest on a due process violation. ECF No. 13-7 at 12-14.

Ground I asserts that the alleged failure to promptly present Petitioner to a magistrate following his arrest constituted a violation of the Due Process and Equal Protection Clauses. This prompt presentment issue was not presented in Petitioner's direct appeal, but it appears in his State habeas appeal. However, in the habeas appeal, there is no mention of the Equal Protection Clause, nor is there an explanation what protections of the Due Process Clause were abridged. Instead, it relied exclusively on West Virginia Code § 62-5-1 (arresting officer shall present the accused to a magistrate "without unnecessary delay"). ECF No. 13-7 at 27-29.

In Ground J, Petitioner claims that the West Virginia officers who allegedly arrested and questioned him in Virginia had no authority to do so because they were acting outside their territorial jurisdiction, thus violating the Fourth Amendment. Petitioner's direct appeal does not include any claim based on these factual circumstances. Moreover, while his habeas appeal did raise these facts, it did not expressly or impliedly raise a Fourth Amendment claim. ECF No. 13-7 at 29-30.

Therefore, in summary, the claims presented in his Section 2254 which were not exhausted, were Grounds A, B, D, E, F, I and J.

### III **State Proceedings Following Stay**

On June 26, 2013, Petitioner, by counsel, filed a second Petition for Writ of Habeas Corpus and Losh List in the Circuit Court of Jefferson County, West Virginia. The Petition alleged:

(A)      PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF HABEAS COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE III OF THE WEST VIRGINIA CONSTITUTION

(B)      PETITIONER'S CONVICTION SHOULD BE REVERSED AS NEWLY DISCOVERED EVIDENCE ESTABLISHES THAT MENTAL COMPETENCY DEFENSES AND ISSUES SUFFERED BY PETITIONER PREVENTED HIM FROM HAVING A RATIONAL UNDERSTANDING OF THE PROCEEDINGS

(C)      PETITIONER RECEIVED A SENTENCE THAT WAS IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE III OF THE WEST VIRGINIA CONSTITUTION.

(D)      PETITIONER HAS CLAIMS TO ASSERT THAT WERE IMPROPERLY DENIED DURING HIS FIRST HABEAS CORPUS PROCEEDING BECAUSE OF THE INEFFECTIVE ASSISTANCE OF HABEAS COUNSEL.[1]

(E)      PETITIONER REQUESTS THAT THE REMAINING SEVEN (7) GROUNDS BE ADJUDICATED AS CONSTITUTIONAL VIOLATIONS OF DUE PROCESS ALTHOUGH SOME OF THE REMAINING ISSUES WERE ADDRESSED IN HIS PREVIOUS HABEAS CORPUS PETITION.[2]

ECF No. 88-23. By Order dated June 26, 2013, the circuit court directed Respondent to answer the petition. ECF No. 88-25. On August 30, 2013, Respondent filed his response to the second Petition for Writ of Habeas Corpus Ad Subjiciendum. ECF No. 88-26. The circuit court held a status/scheduling conference on September 12, 2013. ECF No. 88-27. During this hearing, the circuit court ordered that an evidentiary hearing

---

[1] This allegation contains multiple subparts including: (1) ineffective assistance of trial counsel and evidence that could have been entered; (2) improper conduct of the prosecuting attorney and certain witnesses; (3) incompetency of defendant during trial; (4) venue should have been changed and pretrial publicity; and (5) improper acts of Sheriff Bobby Shirley.

[2] These are the seven grounds raised in his § 2254 which were not exhausted.

be held "on the limited, threshold issue of whether [Petitioner] knowingly and intelligently waived certain grounds in his initial habeas proceeding." Id. A hearing was held [ECF No. 88-28], and thereafter, on March 12, 2014, the court entered an "Order Denying Petition for Writ of Habeas Subjiciendum."[3] ECF No. 88-29.

On August 13, 2014, Petitioner appealed the circuit court's denial of his second habeas in the SCAWV, which raised six assignments of error: [1] denying the relief requested in the Second Petition for Writ of Habeas Corpus regarding ineffective assistance of habeas counsel; [2] error denying the relief requested in his Second Petition for Writ of Habeas Corpus without holding an omnibus habeas hearing; [3] error denying the relief requested in the Second Petition for Writ of Habeas Corpus regarding no valid waiver grounds in Petitioner's Losh list; [4] error denying the relief requested in the Second Petition For Writ of Habeas Corpus regarding newly discovered evidence; [5] error denying the relief requested in the Second Petition for Writ of Habeas Corpus regarding failure to address other grounds raised in the Second Petition; and [6] error denying the relief requested in the Second Petition for Writ of Habeas Corpus regarding clearly erroneous findings. ECF No. 88-30. The State filed a Response on October 22, 2014. ECF No. 88-31. Petitioner filed a Reply on October 24, 2014. ECF No. 88-32. On May 15, 2015, the WVSCA, by Memorandum Decision, affirmed the habeas court's

---

[3] In its Order, the circuit court, found "that Petitioner William Widmyer HAD AN OMNIBUS HABEAS CORPUS HEARING on his first habeas proceeding when: he was represented by counsel; the Circuit Court inquired into all the standard grounds for habeas corpus relief; the Petitioner's knowing and intelligent waiver of grounds not asserted was made in his Losh list after consulting with Mr. Aliveto and Mr. Janelle; and the Circuit Court drafted its comprehensive 47-page January 3, 2006 order denying relief, pursuant to West Virginia Code 53-4A-3, without an evidentiary hearing." ECF No. 88-29 at 22. (emphasis in original). The Circuit Court also found that there was a "VALID WAIVER OF GROUNDS IN PETITIONER'S ORIGINAL LOSH LIST, that those matters were addressed in the prior habeas proceeding, and all those matters are finally adjudicated therein, either on their merits, or through procedural default, as detailed in Judge Wilke's January 3, 2006 order." Id. (emphasis in original).

findings. Specifically, in regards to Petitioner's fifth ground[4], the WVSAC stated that "he fail[ed] to cite to the record on appeal or to present any legal argument in regard to them. We have oft said, '[o]n an appeal to this Court the appellant bears the burden of showing that there was an error in the proceedings below resulting in the judgment of which he complains . . . . 'Syl. Pt. 2, <u>Perdue</u>, 156 W. Va. At 467, 194 S.E.2d at 658. Thus, we decline to further review this assignment of error." ECF No. 88-33 at 8.

### IV. <u>Reopened Section 2254 Petition</u>

Despite granting Petitioner a stay, on December 10, 2013, the Court mistakenly dismissed the petition without prejudice and ordered the case be removed from the active docket. ECF No. 65. On June 4, 2015, Petitioner filed a second section 2254 petition and indicated that all of his State remedies were fully exhausted. See 1:15-cv-98. On November 17, 2016, the Court vacated its "Order Dismissing Petition Without Prejudice" and ordered the Clerk of Court to reopen this matter. ECF No. 73. By order dated March 2, 2017, Respondent was directed to show cause why the petition should not be granted. ECF No. 80. On May 2, 2017, Respondent filed his response and

---

[4] This assignment of error alleged that the Circuit Court erred in failing to address various other grounds for relief raised in his second habeas petition. Those grounds included the following: the Petitioner's sentence is cruel and unusual; his trial counsel was ineffective; the prosecuting attorney, certain trial witnesses, and law enforcement acted improperly; and venue was improper due to pretrial publicity. Specifically relevant to his federal habeas pending before this court, the Petitioner also claimed that the Circuit Court erred when it declined to adjudicate seven additional grounds for relief as constitutional violations of due process. Specifically, the Petitioner claimed he was denied due process where the trial court failed to instruct the jury that murder in the second degree is a lesser included offense of murder in the first degree; the trial court failed to instruct the jury that unlawful assault is a lesser included offense of malicious wounding; the trial court refused to allow the jury to hear an audiotape of his statement to the police; the trial judge failed to recuse himself; the trial court allowed the State to admit into evidence gruesome photos of the decedent's body; law enforcement failed to promptly present him before a magistrate; and the trial court admitted evidence resulting from an illegal arrest. As discussed in the body of this Report and Recommendation, these are the seven grounds that this Court previously found were included in his federal habeas petition, but were not exhausted.

Motion for Summary Judgment with exhibits. ECF Nos. 86-88. On May 30, 2017,

Petitioner filed a Motion to Deny Respondent's Motion for Summary Judgment with a

supporting memorandum. ECF Nos. 95-97. On June 8, 2017, Respondent filed a Reply.

ECF No. 96. Therefore, this matter is now ripe for entry of a second Report and

Recommendation.

## V. <u>Standard of Review</u>

Title 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death

Penalty act of 1996 ("AEDPA"), authorizes a federal district court to entertain a petition

for habeas corpus relief from a prisoner in state custody, "on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court

applies the standards set forth in § 2254(d), which provides that the habeas petition of a

person in State custody "shall not be granted with respect to any claim that was

adjudicated on the merits in state court proceedings unless the adjudication of the

claim" is:

> (1) contrary to, or involves an unreasonable application of clearly
>     established Federal law, as determined by the Supreme Court
>     of the United States; or
>
> (2) based on an unreasonable determination of the facts in light of
>     the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). Moreover, the factual determinations by the state courts

are presumed to be correct and are only rebutted upon presentation of clear and

convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, when reviewing

a petition for habeas relief, the Federal Court uses a "highly deferential lens." <u>DeCastro</u>

<u>v. Branker</u>, 642 F.3d 442, 449 (4th Cir. 2011).

12

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." <u>Thomas v. Davis</u>, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application clauses of § 2254)(1)(d) have separate and independent meanings. <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." <u>Lewis v. Wheeler</u>, 609 F.3d 291, 300 (4th Cir. 2010) (quoting <u>Williams</u>, 529 US at 405) (internal quotations omitted). A habeas writ may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." <u>Id.</u> at 300-01 (internal marks omitted).

Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under the standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, the application must also be unreasonable." <u>Williams</u>, 529 US at 365.

In the instant case, Respondent has moved for summary judgment. Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." <u>Brandt v. Gooding</u>, 636 Fed 3d 124, 132 (4th Cir. 2011) (quoting <u>Maynard</u>

13

v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller & Mary K Kane, Federal Practice and Procedure: Civil §  2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition only genuine disputes over material facts "will properly preclude the entry of summary judgment." Anderson, 477 US at 248; JFK Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." Cox v. Cnty of Prince William, 249 Fed. 3d 295, 299 (4th Cir. 2001) (citing Anderson, 477 US at 248).

Motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. See Miller v. F.D.I.C., 906 F.2d 972, 974 (4th Cir. 1990).

Nevertheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. Anderson, 477 US at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587- 88 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Anderson, 477 U.S. at 249-50).  With these standards in mind, the undersigned considers the two grounds raised by the Petitioner.

## V. Discussion

### A. Procedural Default

Before turning to the merits of Petitioner's claims, the Respondent's contention that some of the claims have been procedurally defaulted should be addressed. See Lambrix v. Singletary, 520 U.S. 518, 524 (1997) ("Our opinions . . . certainly suggests that the procedural-bar issue should ordinarily be considered first.") Respondent asserts that seven of Petitioner's fourteen claims should be summarily dismissed as procedurally barred. More specifically, he moves for summary dismissal of the claims that were found to be unexhausted when Petitioner originally filed this habeas petition[5]: (A) failure to instruct on a lesser included offense of unlawful assault; (B) failure to instruct on lesser included offense of second-degree murder; (D) refusal by court to allow a jury to hear audiotape of confession; (E) refusal of motion to recuse; (F) introduction of a gruesome photograph; (I) failure to promptly present to Magistrate; and

---

[5] For the sake of consistency, the undersigned identifies those claims by the alphabetic enumeration used by the Petitioner in his section 2254 habeas petition.

(J) illegal arrest. Respondent points to the second state habeas court's order, which found that there was a valid waiver of grounds in Petitioner's original <u>Losh</u> list and "that those matters were addressed in the prior habeas proceeding, and all those matters were finally adjudicated therein, either on their merits, or through procedural default, as detailed in [the] January 3, 2006 order. ECF No. 29 at  (emphasis added). Upon appeal, the WVSCA declined to consider Petitioner's claim regarding the Circuit Court's denial of the seven claims because it found that Petitioner had not adequately briefed the issue. ECF No. 33.

Accordingly, Respondent argues that because a prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known, and because the WVSCA routinely refuses to consider inadequately briefed arguments, the state court's reliance on these procedural requirements to deny Petitioner relief on these seven claims constitutes an independent and adequate state procedural default that bars this Court from considering the merits of these seven claims.

"Federal courts may not hear a section 2254 claim if a state court disposed of the claim on adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." <u>Bostick v. Stephenson</u>, 589 F.3d 160, 164 (4th Cir. 2009). "A rule is adequate if it is regularly or consistently applied by the state court . . . and is independent if it does not depend on a federal constitutional ruling." <u>Hedrick v. True</u>, 443 F.3d 342, 359 (4th Cir. 2006) (internal citations and markings omitted) (ellipsis in original). The Fourth Circuit has held that a state procedural rule nearly

identical to West Virginia Code § 53-4A-1(c), which creates a rebuttable presumption that a State habeas petitioner knowingly and intelligently waives any claim that could have been presented during his State habeas proceeding but that was not presented at that time, constitutes an adequate and independent state law ground for decision. Mu'Min v. Prewett, 125 F.3d 192, 197 (4th Cir. 1997).

The Fourth Circuit has explained that "[a] procedural default is excusable under the cause and prejudice standard when the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, and (2) that errors at his trial . . . worked to his **actual** and substantial disadvantage, infecting his entire trial with areas of constitutional dimensions." Wolfe v. Johnson, 565 Fed 3d 140, 158 .27 (4th Cir. 2009) (internal markings and citations omitted) (ellipsis and emphasis in original).

Petitioner has not directly addressed Respondent's position as to procedural default, and he has neither asserted cause and prejudice nor a miscarriage of justice. Instead, Petitioner simply argues that all of his claims are exhausted for the purposes of a federal habeas review. However, Petitioner fails to acknowledge the fact that the seven claims outlined above were never brought to the state courts pursuant to a federal issue in his first state habeas proceeding. While Petitioner attempted to re-raise these issues in a Second Petition for Writ of Habeas Corpus in the Circuit Court of Jefferson County, West Virginia, Petitioner's counsel recognized that the claims were likely procedurally barred under state procedural law. Moreover, the Circuit Court found them to be procedurally barred, and the WVSCA affirmed that decision.

Furthermore, Petitioner has not established, or even argued, that a fundamental miscarriage of justice will occur if the defaulted claims are not addressed on the merits. The undersigned will not construct Petitioner's arguments opposing procedural default for him.  Therefore, having concluded that the Petitioner has procedurally defaulted Grounds **A, B, D, E, F, I,** and **J**,  which were unexhausted when he filed this petition in 2010, they will not be addressed on the merits. In addition, as discussed *infra*, Petitioner has not exhausted his claim that his counsel on direct appeal was ineffective, and he cannot establish excuse for that default. The undersigned now turns to the merits of the six exhausted claims.

## C. Breaking and Entering

Petitioner alleged that he was denied his constitutional rights to due process and his constitutional right to a fair and impartial jury when the trial court instructed the petit jury on breaking and entering when the State was unable to substantially prove all elements of the offense as alleged in the indictment. With respect to this claim, the undersigned notes that Petitioner alleges that the Grand Jury, in Count IV of the indictment, charged him with a violation of West Virginia Code § 61-3-11.[6] ECF No. 1 at 9. In fact, the indictment charged Petitioner with a violation of West Virginia Code § 61-3-12 [ECF No. ], which provides, in part, that:

> If any person shall, at any time, break and enter, or shall enter without breaking, any office, shop, underground coal mine, storehouse, warehouse, banking house or any house or building, other than a dwelling house or outhouse adjoining thereto or occupied there with, . . . , Within the jurisdiction of any county in this state, with intent to commit a felony or any larceny, he or she shall be deemed guilty of a felony and, upon conviction, shall be confined in a state correctional facility not less than one nor more than 10 years . . . .

---

[6] West Virginia Code § 61-3-11 sets forth the crime of burglary.

W.Va. Code § 61-3-12.

Regardless, the Petitioner's argument is that there was no evidence that he entered the townhouse with the intent to commit homicide as charged in the indictment.[7] At bottom, the Petitioner is challenging the sufficiency of the evidence presented by the state and arguing that there was insufficient evidence to convict him of breaking and entering.

When called upon to review a state court conviction for constitutional infirmity, a federal habeas court has a duty to assess the factual record in order to determine whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, "does not require a court to ask itself whether **it** believes the evidence at the trial established guilt beyond a reasonable doubt." Id. at 318-19 (internal quotation omitted) (emphasis in original). Rather, the crucial question is whether, "viewing the evidence in the light most favorable to the prosecution **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Fundamentally, "Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). Not only must a state court defer to the conclusions and inferences of the jury on direct review, but on federal collateral review, a "federal [habeas] court … may [overturn a state court decision] only if the state court decision was 'objectively unreasonable'" pursuant to 28 U.S.C. § 2254. Id.

---

[7] The indictment charged that Petitioner committed the offense of" breaking and entering….break and enter an unoccupied house other than a dwelling house belonging to Butch Walker with the intent to commit a crime, to-wit: murder…." ECF No. 88-1 at 5.

With respect to breaking and entering, the jury was charged as follows:

Before the defendant can be convicted of breaking and entering, the State of West Virginia must overcome the presumption that the defendant is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that, one, the defendant, William Trampus Widmyer, two, in Jefferson County, West Virginia, three, on or about the 16th day of November 1998, four, did break and enter, five an unoccupied house other than a dwelling house, six, belonging to Butch Walker, seven, with the intent to commit murder.

ECF No.  88-4 at 171.

At trial, Donald E Walker testified that he owned the townhouse at issue [ECF No. 88-4 at 100, and he further testified that the Petitioner did not have any authority to be inside the townhome. Id. at 101. Mr. Walker testified that he found the townhome was broken into on or about November 16, 2008. ECF No. 88-4 at 100. More specifically, he testified that he found that the back door had been pried open. Id. at 101. There appears to be no dispute that the townhome was unoccupied inasmuch as Petitioner, in his interview with police on November 19, 1998, stated that the townhome was unoccupied.[8] ECF No. 3 at 186. In addition, in his interview with Officer Thompson, he stated the he took a lug wrench from his car into the empty townhome and waited for Tara to come home. ECF No. 88-3 at 187.  When she finally did come home, Petitioner stated that she did not get  in her car, and that's when he left. Petitioner left and next went to the church where his ex-father-in-law was the minister. Id. His ex-father-in-law was not at the church, but he broke several windows of the church building. Id. at 240. He then drove to his parents' home to retrieve three guns and ammunition. Id. at 191-93. Petitioner next went looking for Mr. Miller, Ms. Widmyer's boyfriend, at his trailer, but

---

[8] The interview was taped, and a transcript prepared. The transcript was read into evidence at trial.  With respect to the townhome, the Petitioner stated that he "[w]ent over there and opened the door to that empty townhouse beside her place." ECF No. 88-3 at 187.

he was not there. Id. at 195. Petitioner then drove back to Ms. Widmyer's townhome and parked between four and six blocks away from the townhome. Id. at 160. He took all of the weapons out of the vehicle with him. Id. at 199. When he arrived at Ms. Widmyer's townhome, he looked into the window and saw Mr. Miller and her asleep on the couch. Id. at 199; ECF No. 88-4 at 8. He fired approximately five shots into the home using a lever rifle.  ECF No. 88-3 at 202. Mrs. Widmyer was dead at the scene, and Mr. Miller sustained significant injuries to his leg which required a three-month hospital admission.

Given the sequence of events which followed Petitioner's illegal entry into the vacant townhome owned by Mr. Walker, including the subsequent shooting of Tara Widmyer, there was sufficient evidence from which a reasonable trier of fact could have found that Petitioner intended to kill Ms. Widmyer when he broke and entered into the vacant townhouse. Therefore, the state courts' decision regarding Petitioner's claim of insufficient evidence is neither contrary to clearly established federal law nor an unreasonable application of clearly established federal law.

The undersigned notes that in his Reply to Respondent's Motion for Summary Judgment, Petitioner for the first time in any proceeding, argues that the vacant townhouse is, by definition, a place of residence and therefore, does not "fall with the scope or purview of W. Va. Code § 61-3-2." ECF No. 97 at 12.  Because this argument was never presented in any state proceeding, nor even in Petitioner's federal habeas petition, the undersigned finds that it is defaulted and declines to address it further.

## G. EX PARTE COMMUNICATION

In support of this claim, Petitioner alleges that on July 22, 1999, during the third day of trial, the jury foreman sent a note to the trial court judge. The note requested that the jury be permitted to listen to the Petitioner's audio recorded statement. After some discussion, outside of the presence of the jury, the trial court judge asked the bailiff to relay to the jury that he was unable to provide the requested audiotape to them. Petitioner, argues that the conversation between the bailiff and the jury occurred outside of the presence of defense counsel and Petitioner. No contemporaneous record was made of the conversation between the jury foreman and the bailiff, and defense counsel made no objection to Petitioner's absence.

The trial of transcript establishes that, in fact, on July 22, 1999, during jury deliberations, the jury wrote the court a note indicating a desire to listen to the audiotape of the confession. ECF No. 88-5 at 4. The trial judge, in open court and on the record, notified the parties of the jury's request. Id. in addition, the trial transcript specifically indicates that Petitioner and all counsel were present. Id. The court read the jury's request out loud to counsel and Petitioner. Id. The court then held an open discussion about how to proceed in responding to the request. Petitioner's counsel suggested creating a redacted audiotape to which the State objected. Id. at 4-6. The court openly deliberated the ease of creating a redacted audiotape. Id. After listening to both sides, the court concluded that Petitioner had originally requested the redacted transcript be produced to the jury in lieu of the audio tape, and that the State objected to creating a redacted tape at this late stage. Id. at 6. The court decided to not allow the jury to hear a redacted version because of the original agreement, the time it would take to create, and the state's objection. Id. The court then stated in front of Petitioner and all counsel

that he was "going to have the Bailiff to inform the jury that the Court regrets that it cannot accommodate it." Id. While Petitioner was present during this discussion in the trial court's statement that he was going to have his baliff give this message to the jury, he was not present when the bailiff gave the message to the jury.

The Supreme Court has held that "the right to personal presence at all critical stages of the trial . .  [is a] fundamental right [ ] of each criminal defendant." Rushen v. Spain, 464 U.S. 114, 117 (1983). However, the Constitution does not require the defendant to be present when "presence would be useless, or the benefit but a shadow." Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964).

In addressing this ground, the habeas court applied the harmless constitutional error standards set forth in Fahy v. Connecticut, 375 U.S. 85 (1963), and its conclusion that  "… the paramount question that must be answered in making this determination is 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" The habeas court also acknowledged that the Supreme Court elucidated that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" Chapman v. California, 386 U.S. 18, 24 (1967). The habeas court then conducted an analysis of Petitioner's complaint and found no evidence to suggest that the bailiff said anything other than that told to him by Judge Steptoe in open court. ECF No. 88-20 at 19-20. Without anything to the contrary, the habeas court concluded, by applying Fahy and Chapman that any error was harmless beyond a reasonable doubt. Id. at 20. Given that there appears to be no ruling by the Supreme Court that would prohibit a baliff from

relaying a message from the trial judge to the jury, when the content of that message has been disclosed to counsel and the defendant in open court, Petitioner cannot establish that habeas corpus relief is warranted on this issue.

**H. Confession in Violation of the Fifth and Fourteenth Amendments**

The United States Supreme Court has held that in order to protect a defendant's right against compelled self-incrimination under the Fifth Amendment, before police officers initiate custodial interrogation they must advise the defendant that, in addition to other rights, he has the right to remain silent and the right to counsel. See Miranda v. Arizona, 384 U.S. 436 (1996). Moreover, in Edwards v. Arizona, the Supreme Court added an additional layer of protection by holding that once a defendant invokes his right to an attorney under Miranda, the defendant must reinitiate contact in order for authorities to resume questioning. Edwards, 451 U.S. 477 (1981). The Supreme Court has held that the determination of whether the accused actually invoked his right to counsel is an objective inquiry. Davis v. United States, 512 U.S. 452 (1994). Therefore, before the Edwards rule is applicable, the suspect's invocation of his right to counsel must be sufficiently clear, unambiguous, and unequivocal. Edwards, 451 US at 457. "Invocation of the Miranda right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney . . . But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [ ] precedents do not require the cessation of questioning." Davis at 459 (internal citations omitted).

In this case, Petitioner voluntarily appeared at the Sheriff's Office in Shenandoah County, Virginia on November 19, 1998. ECF No. 1 at 20. He was read his Miranda rights at 10:46 a.m. and then was interviewed by Sgt. Lindamood ("Lindamood") regarding offenses unrelated to the charges which were eventually filed in West Virginia. Id. During this interview, the following conversation took place:

Lindamood: Because there are some things that happened in West Virginia that you said you'd rather not go into that you wanted to . . .

Widmyer: Wait.

Lindamood: Wait till they pressed charges on you over there.

Widmyer: Talk to a lawyer.

ECF No. 88-7 at 7. The interview with Lindamood ended at 11:25 a.m. Id. at 8.

Thereafter, Investigator Thomas ("Thomas") of the Woodstock police recited a summary of facts that he understood that Lindamood established during his interview. ECF No. 88-8. While talking to Thomas, Petitioner asked, "Well, I guess they will just lock me up and throw me in a hole, or what will happen?" Id. at 2. Thomas responded: "you will be taken before the court here in Shenandoah County on the fugitive warrant, and you will be asked if you will waive extradition and the process will continue from this point. The West Virginia Officers are here, they will want to talk to you. Will that be okay?" To which Petitioner answered, "Yes." Id.

Sometime between 11:00 and 11:15 a.m., two members of the Ranson, West Virginia Police Department arrived in Shenandoah County. They saw him after Thomas finished. They read Petitioner his rights at 11:55 a.m., and went over each line of his rights and had him initial each line. ECF No. 88-2 at 23. More specifically, he was

advised that: (1) he had the right to remain silent; (2) anything he said could be used against him in court; (3) he had the right to talk to a lawyer for advice before he was asked any question and to have him with him during questioning; and (4) if he decided to answers questions without a lawyer present, he still had the right to stop answering at any time. Id. at 23-24. Petitioner then signed an acknowledgment of his rights at 11:58 a.m., and waived the rights that had been read to him. Id. at 24. Petitioner then confessed to the offenses at issue in West Virginia.

Petitioner maintains that his original statement to the Virginia police, "Wait … talk to a lawyer," was a request for counsel, and although he subsequently advised Thomas that he was willing to speak to the West Virginia police from Ranson, he did not waive his right to the presence of counsel. ECF No. 1 at 20.  Accordingly, Petitioner argues that all evidence derived from the interview with the Ranson police should have been suppressed and precluded from consideration by the petit jury during his criminal trial. Id. at 21.

In this case, the habeas court reviewed the principles of Miranda, Edwards and Davis and determined that Petitioner's comment, "Wait … [t]alk to a lawyer" was not a clear indication of his desire to obtain the assistance of counsel. ECF No. 88-20 at 21. Rather, the habeas court found it was an ambiguous request for counsel. As noted by the habeas court, numerous courts have found similar comments as ambiguous requests for counsel and not implicating a violation of Edwards. See Davis, 512 US at 462 ("Maybe I should talk to a lawyer" was not an unequivocal request for counsel); United States v. Mendoza-Cecelia, 963 F.2d 1467, 1472 (11th Cir.), cert. denied, 506 U.S. 964 (1992) ("I don't know if I need a lawyer-maybe I should have one, but I don't

know if it would do me any good at this point" was not in an unequivocal request for counsel"; Mueller v. Angeline, 181 F.3d 557, 573-74 (4th Cir.), *cert. denied*, 527 U.S. 1065 (1999) ("Do you think I need an attorney here?" was not an unambiguous request for counsel"; Coleman v. Singletary, 30 F.3d 1420, 1422-23 (11th Cir. 1994), *cert. denied*, 514 U.S. 1086 (1995) ("I don't know. But if [the lawyer] said to stop I don't want to do what he said not to do" was not an unequivocal assertion of the right to remain silent."). Moreover, the record clearly establishes that the only questions asked by the Virginia police following the statement were clarifying questions regarding the voluntary nature of his previous statements and whether the summary was correct. ECF Nos. 88-7, 88-8.

Furthermore, even if Petitioner's comment was not an ambiguous request for counsel, Petitioner reinstated the conversation with the police. Specifically, after clarifying the voluntariness of the statements and the summary was correct, Petitioner reinstated the conversation by asking Thomas what was going to happen to him. Thomas responded to the question and then asked if Petitioner wished to speak to the West Virginia police officers, to which he replied yes without any qualifications. As such, even if this court were to view Petitioner's statement as an unequivocal request for counsel, there is no violation of Edwards because he reinitiated the conversation. See United States v. Valdez, 880 F.2d 1230, 1232-34 (11th Cir. 1989) (finding no Edwards violation where suspect asking a car on way to jail "where are we going" in officers response lead to incriminating statement); see also Bassett v. Singletary, 105 F.3d 1385, 1387 (11th Cir. 1997) (finding no Edwards violation where suspect reinitiated discussions by asking "well what do you want, anyway?").Accordingly, the state habeas

decision on this issue is neither contrary to or an unreasonable application of clearly established Federal law nor an unreasonable determination of the facts in light of the evidence present in the state court proceedings.

## K. Defective Indictment

Petitioner alleges that he was denied the fundamental fairness of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States when the trial jury was precluded from making a finding of murder in the first degree or murder in the second degree in compliance with W. Va. Code § 62-3-15. More specifically, Petitioner argues that the indictment returned by the grand jury makes no reference to the lesser included offenses of murder in the first degree including murder in the second degree, voluntary manslaughter, or involuntary manslaughter. Petitioner argues that the model indictment set forth in W. Va. Code § 62-9-3 clearly specifies a legislative preference for the inclusion of all degrees of homicide within the standard indictment for murder.

The issues regarding a state court indictment are generally not cognizable in a federal habeas action. See Barba v. McBride, 740  F. Supp 2d 759, 768 (N.D.W. Va. 2010), aff'd, 477 F. App'x 49 (4th Cir. 2012); see also, Asford v. Edwards, 780 F.2d 405 (4th Cir. 1985) (finding that "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis for federal habeas corpus relief unless the deficiency makes the  trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process.").

In Hamling v. United States, the Supreme Court articulated the benchmark by which the sufficiency of an indictment is measured: "[A]n indictment is sufficient if it, first

contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Hamling</u>, 418 U.D. 87 (1974) (citations omitted). This standard is the same standard set forth in West Virginia.

"'[U]nder Article III, Section 14 of the West Virginia Constitution,] [a]n indictment is sufficient when it clearly states the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense.' Syllabus Point 1, <u>State v. Furner</u>, 161 W.Va. 680, 245 S.E. 2d 618 (1978)." Syllabus Point 1, <u>State v. Childers</u>, 187 W.Va. 54, 415 S.E.2d 460 (1992). Additionally, "'[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syllabus Point 3, <u>State v. Hall</u>, 172 W.Va. 138, 304 S.E.2d 43 (1983)." Syllabus Point 2, <u>State v. Childers</u>, <u>supra</u>.

Count One of the indictment returned against Petitioner reads as follows:

> WILLIAM TRAMPUS WIDMYER on or about the ____ day of November, 1998, in the County of Jefferson, State of West Virginia, committed the offense of MURDER OF THE FIRST DEGREE in that said WILLIAM TRAMPUS WIDMYER did then and there feloniously, intentionally, willfully, maliciously, deliberately, premeditatedly and unlawfully slay, kill and murder Tara Rose Widmyer, and that a Marlin model 336 35 cal.rifle was used in the commission of said offense against the peace and dignity of the State of West Virginia in violation of West Virginia Code § 61-2-1 as amended.

ECF No. 88-1 at 2.

The habeas court reviewed the requirements of <u>Hamling</u> as well as the requirements of Rule 7 of the West Virginia Rules of Criminal Procedure and found that

the indictment in this case does not violate any provisions of the West Virginia or United States Constitution as it "plainly and fully informed the accused of the character and cause of the accusations." ECF No. 88-20 at 36.

The undersigned finds no error in this conclusion. The indictment, with respect to Count One, contains the elements of the offense charged and fairly informs Petitioner of the charges against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Finally, despite his allegation, Petitioner cites no case that establishes a requirement that the indictment should have included all degrees of homicide within the standard indictment for murder. In fact, in a similar case, in which the State did not follow the form for an indictment for murder provided at W. Va. Code § 62-9-03, the WVSCA found no error so long as the accused is adequately informed of the nature of the charge and the elements of the offense. State v. Hall, 172 W.Va. 138, 304 S.E.2d 43 (1983).  In addition, in that same case, the WVSCA found that "[j]eopardy to lessor degrees of homicide, should the evidence adduced at trial support a lessor verdict, we consider an inherent and natural consequence of this greater jeopardy. We therefore consider the indictment sufficient to support a conviction for any of our several degrees of homicide." Id, 172 W.Va. at 144, 304 S.E.2d at 48.

In his Response Petitioner appears to allege that the indictment is invalid because it deviated from the model indictment for murder by adding the words "intentionally," "premeditatedly," and the phrase "Murder of the 1st Degree as opposed to murder. However, West Virginia case law does not provide that an indictment be in

the exact form as that suggested by this section, and decision in <u>Hall</u>, <u>supra</u> provides otherwise.

As previously noted, the issues regarding a state court indictment are generally not cognizable in a federal habeas action. Petitioner has filed to establish that there was any deficiency herein, let alone one that made the trial so egregiously unfair as to amount to a deprivation of his right to due process. Therefore, Petitioner has failed to establish any basis for relief in a federal habeas petition with respect to the indictment as to Count One.

**L. Ineffective Assistance of Trial Counsel**

Petitioner alleges that he was denied his Sixth Amendment right to the effective assistance of trial counsel. More specifically, Petitioner alleges that trial counsel provided ineffective representation by failing to advance the following issues at any stage of the trial:

A.  Petitioner's absence from a critical state of the proceeding;

B.  Violation of Petitioner's constitutional right to presence of counsel during all police interrogations;

C.  Failure of police officers to promptly present Petitioner before a judicial officer;

D.  The inadmissibility at trial of Petitioner's statements to West Virginia Law enforcement officers; and

E.  The defectiveness of Petitioner's indictment for murder in the first degree.

ECF No. 1 at 29.

When a petitioner brings an ineffective assistance of counsel claim, counsel's conduct is measured under the two-part analysis in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient.

This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Id. at 687. "Deficient performance is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." Griffin v. Warden, Maryland Corr. Adj. Ctr., 970 F.2d 1355, 1357 (4th Cir. 1992).

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. In order to demonstrate prejudice, Petitioner must show that but for his attorney's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687. Error by counsel which falls short of the constitutional ineffectiveness standard does not constitute cause, notwithstanding that the error may arise from inadvertence, ignorance, or strategic choice. Murray v. Carrier, 477 U.S. 478 (1986).

Moreover, as the Court has made clear, this review is done through the lens of § 2254, as modified by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). In looking at ineffective assistance claims through this lens,

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not

> in operation when the case involves review under the
> Strickland standard itself.

Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (internal citation omitted). Congress intended for AEDPA to raise the bar for relief in a 2254 case because it deals with claims that have already been litigated in state court. Id. at 786. Accordingly, "even a strong case for relief does not mean that state court's contrary conclusion was unreasonable. Id. (citing Lockyer, 538 U.S. at 71).

In the instant case, although Petitioner enumerates five specific instances in which trial counsel was ineffective, the only claims that he details is the failure of trial counsel to seek suppression of his audio taped confession which he claims was illegally obtained by West Virginia law enforcement officers in Shenandoah County, Virginia. Petitioner's assertion that trial counsel failed to raise this issue at any point in his trial is simply inaccurate. The trial court had a pre-trial hearing on July 16, 1999, during which extensive testimony was taken on the issue of any and all Fourteenth Amendment issues that Petitioner has in regards to his or and written statements, including the confession at issue. ECF No. 88-2. The trial court found it to be admissible. Id. Petitioner does not allege that he received deficient representation, rather, he alleges that he received no representation. In light of the pre-trial hearing, that allegation is erroneous.

Moreover, with respect to his other claims, Petitioner makes a hollow assertion of ineffective assistance of counsel. However, the Supreme Court has cautioned that a claim of ineffective assistance of counsel is not intended to be a figurative "do-over" fraught with "what-ifs" as it would be too "tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a

court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Here, Petitioner makes no attempt to demonstrate that the acts or omissions he complains of were not only unreasonable but "actually had an adverse effect on the defense." Strickland, 466 U.S. 690-93. According, Petitioner fails to establish either prong of the Strickland test, and he has failed to establish that he was denied his constitutional right to effective assistance of counsel.

## M. Counsel's Concession of Guilt

As a separate claim of ineffective assistance of counsel, Petitioner alleges that trial counsel conceded his guilt before the jury without his prior knowledge or consent during opening and closing argument. ECF No. 1 at 30. Petitioner misstates the import of counsel's comments.

In opening statement, counsel stated:

Do you know what this case is about? This entire case is about Trampus Widmyer's state of mind at the time of the shooting. You need to determine whether or not the state can carry the burden of proving his state of mind beyond a reasonable doubt. Every first degree murder trial requires this of the jury.

Whether or not the accused committed the act is at issue in many cases, but not in this one. Trampus admitted to doing this act. He admitted it multiple times. He provided a lengthy taped statement to Lieutenant Roberts. Lieutenant Roberts will read that entire statement to you. You will have that statement to take back with you. The transcribed statement, when you deliberate. He also admitted the act on several other occasions.

But that's not the end of the story....

Each one of you to be true to your oaths as jurors has to suspend judgment until you have heard the entire case. In this case, Trampus's state of mind is equally as important an element as the identity of the defendants. Accordingly, just because Trampus fulfills the identity element of this offense by admitting the act does not mean that the state has

proven its case. Please do not make a snap judgment on the totality of this case just because part of it is undisputed.

ECF No. 88-3 at 153-54.

It is well established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without obtaining consent of the defendant. <u>See Florida v. Nixon</u>, 543 U.S. 175, 187 &2004). "Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed. <u>Sexton v. French</u>, 163 F.3d 874, 885 (4th Cir. 1998) (internal quotation marks omitted). Admittedly, "certain decisions regarding the exercise or waiver of basic trial rights are of such movement that they cannot be made for the defendant by a surrogate." <u>Nixon</u>, 543 U.S. at 187. However, the only decisions that have been identified by the Supreme Court as belonging exclusively to the defendant are "whether to plead guilty, waive a jury, testify in his or her behalf, or take an appeal" <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983).

As noted by the habeas court, the evidence against Petitioner was substantial, and Petitioner's counsel had no diminished capacity or other mental state defense that they could offer. Accordingly, as determined by the habeas court, the only strategy available to the defense was on the question whether Petitioner would receive the jury's "mercy" recommendation and be eligible for parole. The habeas court then found that Petitioner's defense team made a strategic decision to concentrate on the question of the jury giving Petitioner mercy and therefore parole eligibility. Importantly, the habeas court noted that Petitioner's counsel was careful not to admit guilt and never admitted guilt, but rather, admitted the act of shooting. Moreover, trial counsel did not dwell on

the act of shooting, but moved on quickly to their primary arguments for mercy and possibility of parole. ECF No. 88-20 at 40.

Petitioner's assertion to the contrary, counsel did not concede guilt. Moreover, given the strength of the evidence against him, Petitioner has not and cannot show that counsel's trial strategy, as evidenced by opening arguments, had any impact on the outcome of the trial. Furthermore, even if counsel's comments could be construed as admitting guilt, the same is not per se ineffective assistance. Petitioner's situation is much like that discussed in Baker v. Corcoran, 220 F.3d 276 (4th Cir. 2000). In that decision, the Fourth Circuit found that Baker's assertion "that counsel were ineffective for conceding guilt [was] without merit." Baker at 295. The Court reasoned that:

> [o]ur precedents plainly illustrate that counsel's concession of a client's guilt does not automatically constitute deficient performance . . . . . We have observed that "there is a distinction which can be drawn between a tactical retreat and a complete surrender," . . . and that 'some remarks of complete concession may constitute ineffective assistance of counsel, but tactical retreats may be reasonable and necessary within the context of the entire trial, particularly when there is overwhelming evidence of the defendant's guilt," . . . .

Id. at 295-96. Moreover, the Court found that "counsel's decision to concede Baker's involvement in the robbery and murder . . . was a reasonable tactical retreat, rather than a complete surrender. The evidence of [his] involvement in the crime was simply overwhelming; therefore, the only strategy reasonably available to counsel was to persuade the jury that [he] was not the triggerman, and thus not eligible for the death penalty." Id. Therefore, the record before the Court fails to establish that counsel was ineffective in conceding that Petitioner "committed the act," and he is not entitled to habeas relief.

**N.  Ineffective Assistance of Appellate Counsel**

Petitioner alleges that he was denied effective and meaningful assistance of counsel when his appellate counsel omitted significant grounds for relief in his direct appeal. More specifically, Petitioner alleges that appellate counsel should have asserted the following grounds for relief: (1) Petitioner was not present during the conversation between the baliff and the deliberating jury regarding the request to hear the audiotape; (2) Petitioner's confession was admitted into evidence in violation of his prior request for the presence of counsel; (3) Petitioner was not promptly presented to a magistrate; (4) Petitioner's confession was the fruit of an illegal arrest; (5) the indictment was defective; and (6) ineffective assistance of trial counsel. ECF No. 1 at 32. Moreover, Petitioner contends that these issues were as strong if not stronger than the issues presented by his counsel on direct appeal.[9]

"The standard for reviewing a claim of ineffectiveness assistance of appellate counsel is the same as when reviewing the effectiveness of trial counsel." Lucas v. McBride, 505 F. Supp. 2d 329, 350 (N.D. W.Va. 2007); see also Smith v. State of South Carolina, 882 F.2d 895 (4th Cir. 1989), *cert. denied*, 493 U.S. 1046 (1990). The Supreme Court, in applying the Strickland factors to appellate counsel's performance, has held that a defendant:

---

[9]On direct appeal, counsel raised the following six grounds: (1) it was prejudicial and reversible error for the court to deny the defense motion for recusal of the judge; (2) it was prejudicial and reversible error for the trial court to admit into evidence a gruesome photograph of the body of the victim; (3) it was prejudicial and reversible error for the trial court to refuse to give an instruction on the lessor included offense of second degree murder under Count I of the indictment; (4) it was prejudicial and reversible error for the trial court to refuse to give an instruction on the lessor included offense of the unlawful assault under Count II of the indictment; (5) it was prejudicial and reversible error for the trial court to give an instruction on the elements of breaking and entering under Count IV of the indictment when the evidence did not support the charge; and (6) it was prejudicial and reversible error for the trial court to refuse the jury's request to hear the audio tape of defendant's statement to police. ECF No. 13-3 at 5.

> must first show that his counsel was objectively unreasonable, in failing to find arguable issues to appeal - that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the defendant] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764, (2000). Moreover, the Sixth Amendment does not require that appellate counsel raise every nonfrivolous issue on appeal. In fact, the Supreme Court has recognized the importance of "having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983). Additionally, in reviewing appellate counsel's performance, the court "must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)).

The undersigned cannot find any indication that Petitioner raised the issue of ineffective counsel on direct appeal in either state habeas proceeding or on appeal of those proceedings, and therefore the issue is unexhausted and procedurally defaulted. In apparent recognition of this fact, Petitioner requests that this Court defer ruling on procedural default until the United States Supreme Court issues its opinion in Davila v. Davis, Director, Texas Dept. of Criminal Justice, arguing that if "Mr. Davila prevails, he will be allowed to make the claim, in a federal habeas corpus case, that the performance of his lawyer on direct appeal was deficient [and] expand the Martinez exception to state habeas attorney who failed to make a claim against the attorney filing the direct appeal." ECF No. 97 at 33.

In certain limited situations, state habeas counsel's ineffectiveness may excuse procedural default and permit a court to reach the merits of an ineffective assistance of a trial counsel claim. Trevino v. Thaler, 133 S.Ct. 1911 (2013) (citing Martinez v. Ryan, 132 S.Ct. 1309 (2012)). However, since Petitioner filed his reply, the Court issued its decision in Davila and held that ineffective assistance of post-conviction counsel **does not** provide cause to excuse the procedural default of ineffective assistance of appellate counsel claims. 137 S.Ct. 2058, 2064-2070 (2017).

Accordingly, Petitioner cannot satisfy the cause and prejudice requirement to excuse the procedural default of this claim. Accordingly, this claim musty be dismissed.

## VI.   Recommendation

For the reasons set forth above, the undersigned recommends that the Respondent's Motion for Summary Judgment [ECF No. 88] be **GRANTED;** the Petitioner's Motion to Deny Respondent's Motion for Summary Judgment [ECF No. 96] be **DENIED**; and the Petition [ECF No.1] be **DISMISSED WITH PREJUDICE**.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.   A copy of any objections should also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th  Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.  The Clerk is further directed to provide a copy of this Report and Recommendation to counsel of record via electronic means.

Upon entry of this Report and Recommendation, the Clerk of Court is further **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: February 7, 2018.

*/s James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE